RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 12/27/12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| MOUNTAIN MOVERS TRANSPORTATION & LOGISTICS LP | CIVIL ACTION NO. 09-1599 (LEAD CASE) <br> CIVIL ACTION NO. 09-2134 (MEMBER CASE) |
| -vs- | JUDGE DRELL |
| CONTINENTAL TRANS EXPRESS, INC., et al. | MAGISTRATE JUDGE KIRK |

## REASONS FOR JUDGMENT

The Court conducted a bench trial in this matter on August 15, 2012. After the trial, the Court allowed parties an opportunity to submit additional authorities on the issue of the applicability of the Carmack Amendment, 49 U.S.C. § 14706. After carefully reviewing the evidence of record, presented at trial, and the arguments submitted by the parties in post-trial briefs, the Court rules as follows.

I.  Background

On September 10, 2009, Mountain Movers Transportation and Logistics, L.P. ("Mountain Movers") filed the Complaint (Doc. 1) against the following Defendants: Continental Trans Express, Inc. ("Continental"), R. Napoles Raymundo d/b/a R. Napoles Transport, Corp. ("Napoles"), Despino's[1] Wrecking Service of Louisiana ("Despino's"),[2] Northside Towing, LLC ("Northside"), Canal Insurance Company, and

---

[1] The Complaint (Doc. 1) refers to this defendant as "Despinos," but later pleadings filed indicate the proper spelling to be "Despino's."

[2] During trial, Benjamin H. Cain, the sole proprietor of Despino's, testified the correct name of the organization is BH Cain d/b/a Despino's Towing. For the sake of clarity, Mr. Cain's actions, including his testimony, will be identified as actions and testimony by Despino's.

10K Insurance. Upon motions by Mountain Movers (Docs. 63 & 64), Canal Insurance Company and 10k Insurance were dismissed without prejudice by Order signed March 15, 2011. (Doc. 66). Continental and Napoles failed to file an answer or otherwise present any defense, and a Notice of Entry of Default against them was filed on April 5, 2011. (Doc. 75); additionally, they failed to appear for trial on August 15, 2012.

Northside filed suit on open account and for breach of contract in Alexandria City Court on November 20, 2009 based on the same facts in the lead case. (Record Docket No. 09-2134, Doc. 1). Northside named as defendants Mountain Movers, Almaguer Wholesale Distributers,[3] R. Napoles Transport, Corp., Raymundo Napoles, and Independent Pipe Products, Inc. ("Independent Pipe"). Northside's suit was removed to this Court on December 18, 2009 (Record Docket No. 09-2134, Doc. 1). The Magistrate Judge consolidated Northside's suit (09-2134) with the present suit (09-1599) by Order signed February 8, 2010. (Record Docket No. 09-2134, Doc. 17; Record Docket No. 09-1599, Doc. 20).

Mountain Movers filed an Amended Complaint and Counterclaim (Doc. 88) adding Independent Pipe as co-plaintiff and asserting a counterclaim against Northside in the member case.

The following facts comprise the basis of both suits: On December 2, 2008, Independent Pipe shipped a load of plastic pipe (specifically, 110 sticks of 40-foot-long PVC pipe) pursuant to a bill of lading, brokering the load through Mountain

---

[3] Almaguer Wholesale Distributors was dismissed without objection from the entire consolidated action at the pre-trial conference on February 16, 2012.

Movers. The pipe, worth $41,096.00 at the time of shipping, was to be picked up in Dallas, Texas and delivered to Jacksonville, Florida. Mountain Movers brokered the load through Continental who in turn hired Napoles to transport the pipe. (Carrier Rate Confirmation and Contract Agreement between Mountain Movers and Continental, Trial Exhibit P-11). Napoles' 18-wheeler truck had mechanical problems near Colfax, Louisiana, and a police dispatcher called Despino's to tow Napoles' truck and trailer with the load of pipe. Despino's was unable to effect the tow and called Northside out to the scene to assist. Napoles' truck and the load of pipe were towed to Northside's tow yard in Alexandria, Louisiana. Subsequently, some of the pipe was transferred to Despino's yard where it remained until June of 2012. Details of the pipe's location and efforts to retrieve it are the subject of the dispute between the parties and will be discussed *infra* as relates to applicable legal obligations.

In December of 2010, Independent Pipe accepted a check for $20,000 from Mountain Movers (Trial Exhibit P-9), and Mountain Movers subsequently pursued this action on its own behalf and as subrogee of Independent Pipe as owner of the pipe. (Doc. 86 at p. 3). Mountain Movers asserts recovery of damages and attorneys fees pursuant to the Carmack Amendment, 49 U.S.C. § 14706, and, alternatively, under Louisiana state tort law for conversion of the pipe. Specifically, Mountain Movers seeks loss of value of the pipe, legal interest from the date of illegal seizure, costs of transferring the pipe, and attorney fees.

Despino's and Northside both argue they are not subject to the Carmack Amendment and are not liable to Mountain Movers. Both towing companies further

assert they are provided a privilege or lien over the truck, trailer, and pipe under Louisiana law. Finally, Despino's and Northside assert Mountain Movers and Independent Pipe failed to mitigate their damages by failing to pick up the pipe at an earlier date.

II.  **Law and Analysis**

   A.  *The Carmack Amendment*

The Carmack Amendment imposes liability upon "motor carriers" for "actual loss or injury to the property" transported in interstate commerce. 49 U.S.C. § 14706(a)(1). The Fifth Circuit has concluded:

> Congress has intended by the Carmack Amendment to provide a uniform national remedy against carriers for breach of the contract of carriage, including a liability for default in any common-law duty as a common carrier.

Hoskins v. Bekins Van Lines, 343 F.3d 769, 777 (5th Cir. 2003) (quoting Air Products and Chemicals, Inc. v. Illinois Central Gulf R. Co., 721 F.2d 483, 487 (5th Cir. 1983)). The Hoskins court further determined that "Congress intended for the Carmack Amendment to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." Hoskins, 343 F. 3d at 778. A prima facie case under the Carmack Amendment requires the shipper to demonstrate "(1) delivery of the goods in good condition, (2) receipt by the consignee of less goods or damaged goods, and (3) the amount of damages." Id. at 778 (citations omitted).

Based on the facts presented, Plaintiffs are clearly able to establish a prima facie case under the Carmack Amendment. It is undisputed (1) the pipe was in good

condition when it left Independent Pipe in Dallas, (2) none of the pipe was delivered to the consignee Coastal Maritime, L.L.C. in Jacksonville, and (3) Plaintiffs have presented their recitation of actual damages sustained as a result of the loss of the pipe.

The key inquiry in this case has been which defendants constitute "carriers" such that liability is imposed on them through this federal law. The Carmack Amendment identifies it applies to any carrier "that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105." 49 U.S.C. § 14706(a)(1). Only these carriers are "liable to recover under the receipt or bill of lading." Id. Chapter 105 only refers to rail carriers and is therefore inapplicable to any Defendant in the present case. Subchapters I and III of Chapter 135 refer to 49 U.S.C. §§ 13501–08 and 13531.

The parties have not contested that Continental and Napoles provided transportation of property "between a place in . . . a State and a place in another State." 49 U.S.C. § 13501(1)(A). Accordingly, Continental and Napoles are liable as "carriers" under the general jurisdiction provisions of the Carmack Amendment. Despino's and Northside's actions were entirely confined to Louisiana, and they provided the services of "the emergency towing of an accidentally wrecked or disabled motor vehicle." 49 U.S.C. § 13506(b)(3). Section 13506(b) provides for emergency towing to be exempted "unless otherwise necessary . . . to carry out the transportation policy of section 13101." Id. The policy under 49 U.S.C. § 13101 relates to the setting of reasonable rates for transportation across state lines, and we do not

find authority to suggest emergency tows confined entirely to a single state go opposite that policy. Therefore, we find neither Despino's nor Northside to be liable for Plaintiffs' losses under the Carmack Amendment.

In so doing, we note Plaintiffs' argument for a finding of liability under this federal law is based on 49 U.S.C. § 14501 which sets forth the limits of federal authority to establish regulations over intrastate transportation. Specifically, Plaintiffs identify Section 14501(c)(2)(c) which provides the federal authority over intrastate transportation:

> does *not* apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

49 U.S.C. § 14501(c)(2)(c) (emphasis added). In other words, states and their political subdivisions may enact laws relating to nonconsensual towing services. Based on the testimony at trial, we find the towing in this case to have been consensual (performed *with* the prior consent of the operator of the truck).[4] Plaintiffs argue that because the towing services provided in the present case were consensual, state laws relating to the services are preempted by federal authority relating to the intrastate transportation. However, Section 14501 relates specifically to state versus federal authority to enact laws regarding intrastate travel, which issue is not before this Court. In comparison, the Carmack Amendment at Section 14706 specifically

---

[4] Mr. Cain testified he called Northside to help recover the truck and the load. Madeleine Westberry, the former bookkeeper at Northside, definitively testified the tow was consensual. Neither the owner nor operator of the truck was present to refute this testimony.

refers to Section 13506 which excludes emergency towing from the Amendment's jurisdiction. 49 U.S.C. §§ 13506(b)(3) and 14706(a)(1).

In addition, Plaintiffs rely on cases wherein the deciding court confronted issues substantively different than those before us. Cardinal Towing & Auto Repair, Inc. v. City of Bedford, 180 F.3d 686 (5th Cir. 1999); City of Columbus v. Ours Garage and Wrecker Serv., 536 U.S. 424 (2002). In both cases, the plaintiff was a private towing service suing a municipality over a recently enacted ordinance. The central issue in both cases was the scope of federal preemption provided by 49 U.S.C. § 14501(c). As discussed above, Section 14501 does not govern the liability imposed by the Carmack Amendment; rather, the section specifically refers to "price regulation." Cardinal Towing, 180 F.3d at 691. This litigation does not present issues of regulatory authority, and we need not determine which, if any, exception under Section 14501 applies. Accordingly, we find only Continental and Napoles are liable to Plaintiffs under the Carmack Amendment. The specific amount of liability will be discussed *infra* in relation to the obligations of all parties.

B.   *Existence of a Privilege or Lien*

In comparison, state law controls the obligations between Plaintiffs and Northside and Despino's. The towing companies assert they had a privilege over the truck, trailer, and pipe which enabled them to maintain possession over such items until the towing and storage charges were paid. Privileges only exist where expressly provided for by law. La. C.C. art. 3185. Despino's and Northside argue they were not required to surrender the truck, trailer, or pipe until the owner of such items made "a

complete payment of the towing and storage charges and execute[d] a hold harmless agreement . . ." as required by the Louisiana Towing and Storage Act. La. R.S. 32:1720.1. However, the specific language of this statute requires a third-party lienholder to pay such charges in order for the towing company to surrender the items. Id. The statute does not require that the owner of the stored vehicle pay the charges prior to surrender. Id. Defendants cite doctrine in support of this argument, but they do not identify a statute (nor jurisprudence for that matter) which creates the privilege they assert under the Louisiana Towing and Storage Act. Cf., La. Prac. Secured Transactions § 1:10 (2011–2012 ed.) (discussing amendments to the Louisiana Towing and Storage Act and priorities of security interests). Accordingly, we reject Defendants' argument that La. R.S. 32:1720.1 provides them a privilege over the truck, trailer, or pipe.

However, Louisiana courts have found towing companies have the right to retain possession of a towed vehicle until the towing and storage charges are paid. Seaboard Allied Milling Corp. v. Benitez, 408 So. 2d 325 (La. App. 3 Cir. 1981); Hopper v. Bills, 232 So.2d 296 (La. 1970). This right exists based on Louisiana Civil Code Articles 3222 and 3225 (preservation of property of another and rights of pledge and retention against owner) in conjunction with La. R.S. 9:4501. Seaboard, 408 So.2d at 328.

Despino's and Northside provided towing and storage services for Plaintiffs, and, under the above cited jurisprudence, Defendants were within their legal rights to keep the truck, trailer, and pipe until being paid for their services. Because

Defendants were legally in possession of the items, they did not commit conversion or civil theft as Plaintiffs argue. Seaboard, 408 So.2d at 327–28 (finding "no illegal conversion or unlawful detention" by a towing company's refusal to surrender a towed vehicle until the service charges were paid).

We also find persuasive authority in Seaboard and Hopper for towing being related to safety and therefore not preempted by federal law under the exception in 49 U.S.C. § 14501(c)(2)(A).[5] The courts in Seaboard and Hopper relied on La. R.S. 32:2, *et seq.*, for the proposition that state troopers "had the discretion to have vehicle removed from the highway which could cause driving hazards." Seaboard, 408 So.2d at 327; Hopper, 232 So.2d at 299–300.

C. *Damages*

Plaintiffs claim the following in their "Recitation of Damages" (Doc. 101): $35,846.00[6] for the loss of an/or loss in value of the pipe plus legal interest of

---

[5] Specifically, Section 14501(c)(2)(A) provides federal authority over intrastate transportation does not restrict "the safety regulatory authority of State with respect to motor vehicles." At least one Louisiana court has specifically recognized that the Louisiana Towing and Storage Act statutes fit into Section 14501's safety regulatory exception. Capitol City Towing & Recovery Inc. v. State of Louisiana, 873 So.2d 706 (La. App. 1 Cir. 2004). At trial, Louisiana State Police Trooper James Rougeou testified it would have been a safety hazard for the disabled truck (along with its load) to remain on the side of the roadway. To be clear, 49 U.S.C. § 14501 is relevant to the present inquiry because the situation involves intrastate transportation by Despino's and Northside. In contrast, we found Section 14501 did *not* apply to determining liability under the Carmack Amendment because 49 U.S.C. § 14706 directed us to specific sections detailing which carriers were subject to jurisdiction under the Amendment.

[6] Plaintiffs arrive at this figure based on the difference between the original value of the pipe ($41,096.00) and the salvage value ($5,250.00). (Doc. 101 at p. 2). Plaintiffs introduced the trial deposition of Richard Lane, former general manage of Independent Pipe. (Plaintiff's Exhibit 14). Mr. Lane testified $5,250.00 was the highest amount for which Independent Pipe was able to resell the pipe.

$5,700.00, $650.00 for the costs associated with recovering the pipe, and $24,100.00 in attorney's fees.

Turning to Defendants, the only amount associated with Despino's is the $3,819.12 charge on the Northside invoices to Mountain Movers representing the towing charges for BH Cain as a subcontractor for Northside.[7] (Joint Exhibit 8). At trial, Mr. Cain testified he did not charge Plaintiffs for storage of any items at issue. Further, he stated any storage of the truck, trailer, or pipe at Despino's was done at the request of Northside. Northside claims it is owed the following for towing services rendered: $4,398.00 for the use of its wreckers, $672.00 in labor, $488.75 for police detail fees, and $1035.00 for Levi Bernard as a subcontractor for a total $ 6,593.75. (Joint Exhibit 8). There are several invoices identifying different rates and number of days being charged for storage. The December 5, 2008 invoice identifies $100.00 per day as the applicable rate for the truck, trailer, and pipe. (Joint Exhibit 8). A later invoice of September 2011 indicated the rate for storing the pipe only was $35.00 per day. (Plaintiff's Exhibit 13). Northside's state court Petition (removed to this Court as the member case), claims a rate of $50.00 per day for storage. (Record Docket No. 09-2134, Doc. 1-1).[8] At trial, Mrs. Westberry explained the $35.00 per day rate represented an attempt to negotiate with Mountain Movers and resolve the account.

---

[7] At trial, Mrs. Westberry stated Despino's must have submitted an invoice to Northside in order for Northside to include Despino's towing charges on the invoice to Mountain Movers.

[8] In the state court petition for Northside's member suit, Northside identifies $17,450.00 each as the storage charges for the truck, trailer, and pipe. This is based on a rate of $50.00 per day for 349 days and is the charge for each individual item.

Defendants also assert any award to Plaintiffs should be reduced based on a failure to mitigate damages. Specifically, Defendants argue Plaintiffs could have paid the disputed towing and storage charges as a bond to the appropriate court and recovered the pipe earlier, thereby reducing the loss in value of the pipe. Louisiana law imposes a duty to mitigate damages. La. C.C. art. 2002. On December 5, 2008, Mountain Movers had knowledge of the location of the pipe and the associated towing and storage charges required to be paid for its recovery. The pipe just sat there all the time for nearly four years.

III. Conclusion

We conclude Despino's is entitled to recover from Mountain Movers and Independent Pipe, individually and jointly, in the sum of $ 3,819.12.

Northside is likewise entitled to recover from those same defendants the following:

| | |
|---|---|
| Towing Services | $ 4,398.00 |
| Labor | $ 672.00 |
| Police Detail Fees | $ 488.75 |
| Subcontractor Payments | $ 1,035.00 |
| | $ 6,593.75 |

As for storage charges, the Court considers them appropriate but finds, under the facts of this case, that the dispute between the parties was a legitimate one and defendant Northside is not entitled to its requested amount of $100.00 per day. At trial, Mrs. Westberry explained the truck, trailer, and some of the pipe were moved to Despino's (who is not claiming storage charges); therefore, Northside has provided storage services for only a *portion* of the plastic pipe since December 3, 2008. Further,

11

another consideration is that the evidence shows the pipe was stored in the open air, exposed to the elements, not in a covered facility. Accordingly, in addition to the above, the Court finds a significantly reduced amount of $5.00 per day to be an appropriate storage charge, computing same through this date, continuing to accrue without interest until paid, so long as the pipe remains in Northside's possession, and absent some other agreement by the parties on the ultimate disposal or disposition of the property. Mountain Movers and Independent Pipe are entitled to the salvage value of the pipe, truck, and trailer, if any.

As resolution of the storage issue was entirely within Mountain Movers and/or Independent Pipe's hands, but because the contest before the Court was not unreasonable, we deem the payment of the storage charges awarded herein likewise to be damages suffered by Mountain Movers and Independent Pipe, through this date. Accordingly, these damages are reimbursable to Mountain Movers and Independent Pipe and are owed by Continental and Napoles.

A judgment in accord with this ruling will be signed.

SIGNED on this 27 day of December, 2012 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT